NELSON MULLINS RILEY & SCARBOROUGH LLP
LAUREN A. DEEB (SBN 234143)
19191 South Vermont Avenue, Suite 900
Torrance, CA  90502
Telephone:  (424) 221-7400
Facsimile:   (424) 221-7499
Email:  lauren.deeb@nelsonmullins.com

Attorneys for Plaintiff Core Distribution, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| CORE DISTRIBUTION, INC., a Minnesota corporation,<br><br>Plaintiff,<br><br>vs.<br><br>OXGORD INCORPORATED, a California corporation and DAY TO DAY IMPORTS, INC., a California corporation,<br><br>Defendants. | Case No: 2:21-cv-01635<br>(Assigned to: _____)<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Core Distribution, Inc. ("Core") for its Complaint against Defendants OxGord Incorporated ("OxGord") and Day to Day Imports, Inc. ("DDI") states and alleges as follows:

## PARTIES

1. Core is a Minnesota corporation with its principal place of business at 113 Washington Avenue North, Minneapolis, Minnesota 55401.  Since 2001, Core has designed, manufactured, and supplied innovative, patented products, including its Xtend+Climb® telescoping ladders.

2. Upon information and belief, OxGord is a California corporation with its

principal place of business at 16325 S. Avalon Blvd, Gardena, CA 90248.

3. Upon information and belief, DDI is a California corporation with its principal place of business at 16325 S. Avalon Blvd, Gardena, CA 90248.

4. Upon information and belief, DDI has operated storefronts on Amazon between 2015 and the present under the assumed seller names Car Accessories, Won Lane, and Wholesale Car Accessories. Of those three, only Won Lane appears to be currently active. Attached as **Exhibit A** is a screenshot of the Won Lane storefront, identifying DDI as the business operating the storefront. There is no business entity named Won Lane registered with the California Secretary of State.

5. Upon information and belief, OxGord and DDI are related companies. They share the same address and overlap in management. OxGord's Statement of Information with the California Secretary of State identifies Yehuda Nourollah as the company's CEO, Secretary, CFO, and agent for service of process. **Exhibit B**. DDI's Statement of Information identifies Yosef Nourollah as CEO and Director, Yehuda Nourollah as Secretary, and Akiva Nourollah as CFO and agent for service of process. **Exhibit C**.

## JURISDICTION AND VENUE

6. This is an action for patent infringement arising under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281-285 and false advertising under the Lanham Act, 15 U.S.C. § 1125(a).

7. This Court has subject matter jurisdiction over this matter under at least 28 U.S.C. §§ 1331, 1338(a), and 1367(a).

8. This Court has personal jurisdiction over Defendants because they are both California corporations and committed acts of infringement and false advertising in this state.

9. Venue is proper under 28 U.S.C. §§ 1391(b) and 1400(b) because Defendants reside in this district. In addition, a substantial part of the events or omissions giving rise to the claims in this Complaint occurred within this district.

# CORE'S PATENT RIGHTS

10. Core develops and sells a wide range of cutting-edge products. Core's signature product is a telescoping ladder that the consumer can store in a closet yet use to reach as high as a regular extension ladder. One of Core's signature Xtend+Climb® telescoping ladders is shown below:



11. Core's telescoping ladder uses a latch mechanism to lock the rungs safely in place as the ladder is extended. The latches are unlocked by sliding the buttons on the front face of the rungs toward the middle of the rungs to release the latches.

12. The retail prices of Core's telescoping ladders range from $206.79 to $567.58. These ladders are Core's top performing products.

13. Core owns several patents relating to its telescoping ladders, including United States Patent No. 7,048,094, entitled "Extending Ladder and Associated Manufacturing Methods" (the "'094 patent"). A copy of the '094 patent is attached as **Exhibit D**.

14. Core marks the packaging for its telescoping ladders with the '094 patent number.

**DEFENDANTS' UNLAWFUL SALES**

15. OxGord and DDI have (1) sold telescoping ladders that infringe the '094 patent and (2) misled customers regarding the ladders' safety and maximum load.

16. In 2015, Core became aware of OxGord offering to sell a telescoping ladder on Groupon with buttons on the rungs that looked strikingly similar to Core's Xtend+Climb® products. The Groupon advertisement indicated that there had been "over 1,000 bought":



17. Core ordered the product from Groupon, and the First Accused Ladder arrived in a box bearing both Defendants' names.

18. Core analyzed the First Accused Ladder and confirmed that it met every limitation of at least claim 1 of the '094 patent. A claim chart comparing the First Accused Ladder to claims 1-5 is attached as **Exhibit E**.

19. At around that time, Core also became aware of Defendants advertising, offering to sell, and selling the First Accused Ladder on Amazon.com through their various storefronts (e.g. Won Lane, Car-Accessories, and Wholesale Car Accessories):



20. Having confirmed infringement, Core issued Defendants a cease-and-desist letter in late 2015.

21. Defendants responded by removing the First Accused Ladder from Groupon and providing Core some limited financial information on ladder sales on Groupon and Amazon. Defendants refused, however, to compensate Core for the past infringement.

22. In February 2019, during a deposition in a personal injury lawsuit, Akiva Nourollah (DDI's CFO according to DDI's Statement of Information with the California Secretary of State) falsely asserted that a failed OxGord ladder was a Core

ladder to try to absolve OxGord from liability.  This false assertion embroiled Core in OxGord's legal matter and forced Core to expend substantial time and fees to defend itself in the lawsuit.

23. In reviewing the evidence for the personal injury matter, Core noticed that OxGord was offering a ladder under the product name "Telescoping Ladder 12.5 ft. Aluminum Extension Ladder" (the "Second Accused Ladder") that used pivoting red tabs located below the ladder rungs to unlock the latches:



24. Defendants were offering the Second Accused Ladder through Amazon.com (via DDI's Won Lane storefront), Walmart.com, Homedepot.com, and OxGord's own website (www.oxgord.com).

25. Core immediately noticed discrepancies in the listings regarding the Second Accused Ladder's purported load capacity.  For example, the homedepot.com

listing alternatively represented that the Second Accused Ladder had a "Max 330 lbs. load capacity", a "Load Weight Capacity" of "325 lb. [sic]", and a "Ladder Rating" of "Type 1A-300 lbs."

26. The inconsistencies in weight ratings along with the weight rating claims of 300 pounds and higher caused Core to question the authenticity of the weight rating claims. Core also became very suspicious of OxGord's assertion in the "Warranty / Certifications" field that the Second Accused Product was "ANSI Certified."

27. Core decided to investigate the validity of OxGord's advertised claims and purchased a Second Accused Ladder for testing. The Second Accused Ladder failed miserably.

28. First, to meet ANSI A14.2 section 5.3, the rung and step spacing must be 12" plus or minus 1/8". The Second Accused Ladder had rung spacing of 11.5", which was outside of the allowable spacing. It appears the ladder was made to meet European Union standards, which require 300mm (roughly 11.5") between rungs. The Second Accused Ladder would never pass ANSI standards with rung spacing below 12".

29. Second, the Second Accused Ladder was missing many of the required labels under ANSI A14.2 section 9, such as Ladder Size, Ladder Type (duty rating), Highest Standing Level, Model Number or Name, Manufacturer's or Distributor's Name, Month and Year of Manufacture, and ANSI Compliance. Section 9.6 lists more specific danger and warning labels, many of which were absent from the Second Accused Ladder (notably markings 4, 6, and 7 which show proper use and set-up of the ladder).

30. Third, Core hired a highly-qualified, third-party testing lab to apply the Horizontal Bending Deflection (Type IA – 300 lbs) and Horizontal Bending Ultimate Load (Type IA – 300 lbs) tests under ANSI Sections 7.3.1.1 and 7.3.1.2 to the Second Accused Ladder. The Ladder failed both tests.

31. The Second Accused Product did not meet the design requirements, labeling requirements, or testing requirements for identifying a ladder as a Type IA Telescoping Ladder under ANSI A14.2-2017. Core's testing confirmed that Defendants' safety representations on the various seller platforms were false.

32. Defendants' representations regarding the maximum capacity and accompanying standards for the Second Accused Ladder were likely to influence buying decisions by misleading customers to believe that the Second Accused Ladder was safe and met ANSI standards.

33. Core again wrote to Defendants, this time demanding that they stop falsely advertising the safety of their imitation products. Core also reiterated its demand for financial documents to calculate the amount of damages due for Defendants' prior patent infringement on the First Accused Product.

34. While Defendants ultimately removed the Second Accused Ladder from the various seller platforms, they again ignored Core's request for compensation for past infringement.

## FIRST CLAIM FOR RELIEF

### Infringement of the '094 Patent

### (Against All Defendants)

35. Core re-alleges and incorporates by reference the allegations set forth in the paragraphs 1 through 34 as if fully set forth herein.

36. The First Accused Ladder infringed at least claims 1-5 of the '094 patent, as shown in the claim chart attached as Exhibit E.

37. Defendants offered for sale and sold the First Accused Product on Groupon and through various storefronts on Amazon.com.

38. Defendants had at least constructive notice of the '094 patent because Core marks the packaging for its telescoping ladders with the '094 patent number.

39. Defendants' infringement of the '094 patent damaged Core.

40. Upon information and belief, Defendants' infringement of the '094 patent

was willful, deliberate, and intentional.

41. As a result of Defendants' wrongful conduct, Core is entitled to damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### False Advertising Under the Lanham Act

### (Against All Defendants)

42. Core re-alleges and incorporates by reference the allegations set forth in the paragraphs 1 through 41 as if fully set forth herein.

43. Defendants' false and misleading claims regarding the Second Accused Ladder's satisfaction of ANSI standards and maximum load constitute false advertising and unfair competition, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

44. Defendants made their false and misleading claims in commercial advertisements and caused their statements to enter interstate commerce.

45. Defendants' false and misleading claims deceived, or were likely to deceive, a substantial segment of the consumers and retailers who purchased their ladders.

46. Defendants' false and misleading claims were material and likely to influence the purchasing decisions of consumers and retailers.

47. Defendants' actions have damaged, and will continue to damage, Core, including without limitation injury to Core's commercial interest in reputation or sales by, among other things, causing consumers to purchase Defendants' ladders instead of Core's ladders based on Defendants' false safety claims and causing consumers to negatively associate Defendants' false safety claims with Core due to a perceived affiliation between Defendants and Core or their respective ladders.

48. Upon information and belief, Defendants' actions have been willful and in bad faith, making this an exceptional case under 15 U.S.C. § 1117(a).

49. As a result of Defendants' wrongful conduct, Core is entitled to

injunctive relief, damages in an amount to be proven at trial, trebled where appropriate, and recovery of all reasonable attorneys' fees and costs incurred herein.

## PRAYER FOR RELIEF

WHEREFORE, Core prays for judgment that:

1. The '094 patent is valid and was infringed by Defendants;

2. Defendants and their officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them, be enjoined from further infringement of the '094 patent;

3. Defendants and their officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them, be enjoined from continuing to manufacture, use, sell, or offer to sell the telescoping ladders accused of infringement;

4. An accounting be had for the profits and damages arising out of Defendants' infringement of the '094 patent;

5. Core be awarded compensatory and exemplary damages, including treble damages for willful infringement as provided by 35 U.S.C. § 284, with interest, but no less than a reasonable royalty;

6. Core be awarded its attorneys' fees, costs, and expenses in this action pursuant to 35 U.S.C. § 285 and Fed. R. Civ. P. 54;

7. Defendants and their officers, agents, servants, directors, employees, affiliated entities, and those persons in active concert or participation with any of them, be enjoined from directly or indirectly using in commerce or disseminating to the marketplace any materials, labels, promotional materials, advertising, or other goods containing any of the false and misleading statements described in this Complaint, or any advertising or labeling which communicates similar false and misleading messages;

8. Defendants be ordered to issue corrective advertising and corrective notifications to their customers, including retailers who purchased falsely-labeled products described in this Complaint, reasonably designed to reach all people who may have purchased its falsely labeled products, to advise them of the mislabeling and false statements;

9. Defendants be ordered to deliver up and destroy all advertisements and other promotional materials and labels bearing or using the false and misleading advertising and labeling identified in this Complaint;

10. Defendants be ordered to file with this Court and to serve upon Core within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

11. A monetary award of all of Defendants' profits derived from its false and misleading advertising, to be trebled in accordance with 15 U.S.C. § 1117;

12. Core recover all damages it has sustained from Defendants' false advertising and deceptive practices, including lost profits and lost sales, to be trebled in accordance with 15 U.S.C. § 1117;

13. Core recover all costs incurred in connection with this action, including its reasonable attorneys' fees in accordance with 15 U.S.C. § 1117;

14. Core be awarded pre-judgment and post-judgment interest on its damages, as allowed by law; and

15. Core be awarded such other relief as this Court may deem just, equitable, and proper.

## JURY DEMAND

Core demands a trial by jury.

| | | |
|---|---|---|
| 1 | Dated: February 22, 2021 | NELSON MULLINS RILEY & SCARBOROUGH LLP |
| 2 | | |
| 3 | | By: /s/ Lauren A. Deeb |
| 4 | | Lauren A. Deeb |
| 5 | | ***Attorneys for Plaintiff Core Distribution, Inc.*** |

Grant D. Fairbairn*
   gfairbairn@fredlaw.com
Laura L. Myers*
   lmyers@fredlaw.com
N. Chethana Perera*
   cperera@fredlaw.com
Fredrikson and Byron PA
200 South Sixth Street Suite 4000
Minneapolis, MN 55402-1425
Telephone: (612) 492-7000

* *Pro hac vice* applications to be filed